## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREK ISAAC,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-01993** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **ROBERT MARSH, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendants Sergeant Zachary Hammers and Corrections Officer Robert McClincy's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 36.) For the reasons set forth below, the motion will be granted.

## I.     BACKGROUND

<u>Pro se</u> Plaintiff Derek Isaac ("Plaintiff"), who is a convicted and sentenced state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Benner Township ("SCI Benner") in Bellefonte, Pennsylvania. On October 30, 2020, he commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated there. (Doc. No. 1.) In addition to the complaint, Plaintiff also filed a motion for leave to proceed <u>in forma pauperis</u>, as well as his prisoner trust fund account statement (Doc. Nos. 2, 3).

On November 5, 2020, the Court conducted an initial review of the complaint pursuant to the Prison Litigation Reform Act of 1995 ("PLRA")[1] and partially dismissed the complaint for failure to state a claim upon which relief may be granted. (Doc. Nos. 5, 6.)  The Court also granted Plaintiff leave to file an amended complaint within thirty (30) days.  (Id.)  On December 14, 2020, in accordance with the Court's directive, Plaintiff filed an amended complaint.  (Doc. No. 9.)

Although the original complaint named numerous individuals as defendants (Doc. No. 1), the amended complaint only names the following three (3) individuals, all of whom appear to have been employed by the DOC and worked at SCI Benner during the period of time relevant to Plaintiff's claims: Stefan Stessney ("Stessney"), a Unit Manager of the Bravo Unit; Zachary Hammers ("Hammers"), a Sergeant; and Robert McClincy ("McClincy"), a corrections officer.  (Doc. No. 9 at 1-3.)[2]  Plaintiff asserts that the events giving rise to his claims occurred at SCI Benner on June 3, 2020, when his First Amendment right to free speech was violated.  (Id. at 4 (stating that the "crux" of his complaint is the violation of his "civil rights pertaining [to] the freedom of speech . . . ").)  In support of this assertion, Plaintiff sets forth the following allegations in his amended complaint.

---

[1]  See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[2]  The Court has taken the spelling of Defendants' full names from their filings.  See, e.g., (Doc. No. 36 at 1).

Plaintiff alleges that he was sitting at a table in the dayroom of Bravo Unit Alpha Pod, wearing a COVID-19 mask with the words "I can't breathe" written on it, when Defendant McClincy approached him and stated that he was "[in]citing a riot." (Id.)  Plaintiff responded that he was not inciting a riot and, instead, was honoring George Floyd, and went to cell 179. (Id.) Defendant Hammers subsequently appeared at the entrance of the cell and informed Plaintiff he was there to confiscate the mask and that "these orders came from high." (Id.)  Although Defendant Hammers confiscated Plaintiff's "I can't breathe" mask, Plaintiff acknowledges Defendant Hammers got him a new COVID-19 mask. (Id.) Following this incident, Plaintiff alleges that he witnessed a "white male inmate wearing a skull face mask in the presence of [Defendant] Hammers." (Id. at 5.) Plaintiff alleges that he subsequently saw this inmate wearing the mask on two (2) other occasions, but "no action had been taken." (Id.)  Finally, Plaintiff, who appears to allege that he grieved this incident, takes issue with how Defendant Stessney responded to his initial grievance. (Id.)  More specifically Defendant Stessney states in his response that, "[w]hen staff observe an inmate with an altered mask, they have been directed to provide the inmate with a new mask to ensure [everyone] [is] adhering to COVID-19 safety precautions." (Doc. No. 9-1 at 2.)  Plaintiff aserts that Defendant Stessney violated DOC code of ethics because this directive was not being enforced. (Doc. No. 9 at 5.)

In connection with all of these allegations, Plaintiff claims that Defendants Stessney, Hammers, and McClincy violated his right to free speech under the First Amendment to the United States Constitution.[3]  (Id. at 6.)  As a result of this alleged violation, Plaintiff asserts that "this ordeal has been emotionally and mentally distressing and ha[s] cause[d] an ongoing effect of sorrow, sadness[s] and despair." (Id.)  He seeks compensatory and punitive damages for this "emotional and mental distress" he has experienced.  (Id.)

On April 13, 2021, Defendants Stessney, Hammers, and McClincy filed an answer with affirmative defenses to Plaintiff's amended complaint.  (Doc. No. 20.) The following day, the Court directed the parties to complete discovery within six months and to file any dispositive motions within sixty (60) days of the date on which discovery closes.  (Doc. No. 21.)  Following two (2) extensions of time to complete discovery (Doc. Nos. 26, 27, 30, 31), Defendants Stessney, Hammers, and McClincy filed a collective motion for summary judgment on February 28, 2022, along with a statement of material facts, a supporting brief, and various exhibits. (Doc. Nos. 36, 37, 38.)

Thereafter, on September 28, 2022, Plaintiff filed a motion to dismiss Defendant Stessney from this litigation.  (Doc. No. 41.)  In his motion, Plaintiff

---

[3]  Although Plaintiff also claims that Defendants violated 18 Pa. Cons. Stat. Ann. §§ 2710 and 5301(2), these claims were dismissed with prejudice by the Court on November 5, 2020.  (Doc. Nos. 5, 6.)

4

explained that, although he wished to dismiss Defendant Stessney as a defendant from this litigation, he is still pursuing his claims against Defendants Hammers and McClincy.  (Id.)  On October 3, 2022, the Court issued an Order, which, <u>inter alia</u>, granted Plaintiff's motion and dismissed Defendant Stessney as a defendant from this litigation. (Doc. No. 42.)  In that Order, the Court also directed Plaintiff to file a response to the pending motion for summary judgment.  (Id.)  As reflected by the Court's docket, however, Plaintiff has not filed a response, and the time period for doing so has well since passed.  Thus, Defendants Hammers and McClincy's motion for summary judgment is ripe for the Court's resolution.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(a).  "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law."  <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]"  <u>See</u> <u>Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991) (citing <u>Anderson</u>, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,]" summary judgment is proper.  See id. at 322. Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]"  See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]"  See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (citing Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006)); M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125 (3d Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

## III.  DISCUSSION

### A.  Statement of Material Facts

Defendants Hammers and McClincy (together, "Defendants")[4] have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. No. 36.)  Under the Court's Local Rules, a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  See M.D. Pa. L.R. 56.1.  In addition, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement], as to which [the non-moving party] contend[s] that

---

[4]  As set forth above, Defendant Stessney has been dismissed as a defendant from this litigation. (Doc. No. 42.)

7

there exists a genuine issue to be tried." See id.  All material facts set forth in the

moving party's statement "will be deemed to be admitted unless controverted by [the

non-moving party's statement]." See id.

In accordance with the Court's Local Rules, Defendants filed a statement of

material facts in support of their motion for summary judgment.  (Doc. No. 37.)

Plaintiff, however, did not file his own statement of material facts, responding to the

numbered paragraphs set forth in Defendants' statement.  Thus, under the Court's

Local Rules, Defendants' facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement. This Local Rule serves several
> purposes. First, it is designed to aid the Court in its determination of
> whether any genuine issue of material fact is in dispute. Second, it
> affixes the burden imposed by Federal Rule of Civil Procedure 56(e),
> as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to
> go beyond the pleadings and by her own affidavits, or by the
> depositions, answers to interrogatories, and admissions on file,
> designated specific facts showing that there is a genuine issue for trial.'
> 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal
> quotations omitted) (emphasis added).

See Williams v. Gavins, No. 1:13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5,

2015), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016)

(unpublished) (emphasis in original) (citation omitted).

Accordingly, the material facts in this Memorandum are derived from

Defendants' statement of material facts.  (Doc. No. 37.)  That being said, however,

the Court has conducted a thorough and impartial review of the record in this matter.

To the extent that there are any disputed issues of material fact that are relevant to Defendants' motion for summary judgment, the Court expressly notes such disputes herein.

On or around June 3, 2020, Plaintiff was sitting at a table in the day room at SCI Benner.  (Doc. No. 37 ¶ 2.)  Inmates were required to wear a COVID-19 mask when they were in the day room and, on that day, Plaintiff was wearing a mask with the words "I can't breathe" written on it.  (Id. ¶ 3.)  Plaintiff alleges that Defendant McClincy approached him in the day room and accused him of "[in]citing a riot."  (Id. ¶ 4.)  In response, Plaintiff stated that "I am not [in]citing a riot. I am honoring George Floyd."  (Id. ¶ 5.)  Plaintiff "then arose" and "quietly went to" his cell on his own volition.  (Id. ¶ 6.)

Defendant Hammers went to Plaintiff's cell "approximately 5 or 10 minutes later" and confiscated Plaintiff's "I can't breathe" mask and gave Plaintiff a new COVID-19 mask.  (Id. ¶ 7.)  Defendant Hammers confiscated Plaintiff's mask because inmates are not permitted to alter state-issued items, and the mask was a state-issued item.  (Id. ¶ 8.)  More specifically, DC-ADM 815 Section 1 B.1 provides as follows: "All items issued to an inmate must be used by the inmate to whom they are issued and solely for their intended purpose. Abuse or misuse of these items may result in disciplinary action in accordance with Department policy DC-ADM 801,

'Inmate Discipline.'" (Id. ¶ 9.)  Plaintiff has not worn a mask with any alterations since his mask was confiscated on June 3, 2020. (Id. ¶ 10.)

In addition, Plaintiff alleges that he subsequently observed another inmate that he referred to as "Travis" wearing a mask that displayed a skull image on June 10, 11, and 12, 2020.  (Id. ¶ 11.)  Plaintiff alleges that Defendant Hammers saw this inmate wearing the altered mask, but did not confiscate the mask.  (Id. ¶ 12.)  Defendant Hammers does not recall ever having witnessed an inmate wearing such a mask.  (Id. ¶ 13.)  Moreover, Defendant Hammers states that, if he had seen an inmate wearing a skull mask, he would have asked the inmate to swap out the altered mask for the same reasons that he asked Plaintiff to swap out his altered mask. (Id. ¶ 14.)  Plaintiff concedes that he has not seen inmate Travis wear an altered mask at any time after June 12, 2020.  (Id. ¶ 15.)

## B.    Plaintiff's Claim and the Parties' Arguments

Plaintiff has brought this civil rights action pursuant to the provisions of Section 1983, which provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).  Thus, in order for a plaintiff to state a claim under Section 1983, he must allege "a deprivation of a federally protected right and that this deprivation was committed by [a person] acting under color of state law."  See Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (citation and internal quotation marks omitted).

In the amended complaint, Plaintiff claims that Defendants violated his First Amendment right to free speech by confiscating his "I can't breathe" COVID-19 mask.  (Doc. No. 9 at 4, 6.)  The First Amendment, made applicable to the states through the Fourteenth Amendment, see United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott, 463 U.S. 825, 831 (1983), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  See U.S. Const. amend. I.   Prisoners retain those rights so

long as they are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system.  See Pell v. Procunier, 417 U.S. 817, 822 (1974); Mack v. Warden Loretto FCI, 839 F.3d 286, 298 (3d Cir. 2016) (recognizing this legal principle and citing Pell).

With respect to the prison setting, the United States Supreme Court has stated that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison[,]" and, thus, they "clearly retain protections afforded by the First Amendment[.]"  See O'Lone v. Est. of Shabazz, 482 U.S. 342, 348 (1987) (citations and internal quotation marks and citations omitted).  That being said, the lawful incarceration of prisoners necessarily limits "many privileges and rights," which is "justified by the considerations underlying our penal system."  See id.  (citation and internal quotation marks omitted).  Those limitations "arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."  See id. (citations omitted).

The United States Supreme Court has "often said that [the] evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination."  See id. at 349 (citations and internal quotation marks omitted).  Thus, "when a prison regulation impinges on inmates'

constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  See Turner v. Safley, 482 U.S. 78, 89 (1987) (alteration omitted).  This standard "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration   . . . and[, additionally, this standard] avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree."  See O'Lone, 482 U.S. at 349-50 (citations and internal quotation marks omitted).

Courts are to consider several factors when determining the reasonableness of a prison regulation that infringes on inmates' constitutional rights, including: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it[;]" (2) "whether there are alternative means of exercising the right that remain open to prison inmates[;]" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[;]" and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." See Turner, 482 U.S. at 89-91 (citations and internal quotation marks omitted).

Regarding these factors, while prison officials are required to demonstrate that a rational connection exists between the regulation and a legitimate penological

interest, the inmate bears the ultimate burden of demonstrating that the regulation is unconstitutional.  See Fontroy v. Beard, 559 F.3d 173, 177 (3d Cir. 2009) (citation omitted); Monroe v. Beard, 536 F.3d 198, 207 (3d Cir. 2008) (stating that "the party challenging the prison regulation bears the burden of showing that it is constitutionally unreasonable" (citation omitted)).  Thus, because the inmate "must overcome the presumption that the prison officials acted within their broad discretion[,]" the inmate's burden is a "heavy" one.  See Shaw v. Murphy, 532 U.S. 223, 232 (2001) (citation and internal quotation marks omitted).

Here, Defendants argue that all of the Turner factors are satisfied.  (Doc. No. 38 at 4-8.)  Having reviewed the record in this matter, the Court agrees.  With respect to the first Turner factor, the Court concludes that Defendants have established that there is a valid, rational connection between the prohibition on prisoners making alterations to state-issued COVID-19 masks and the legitimate governmental interest put forward to justify it.  As appropriately argued by Defendants, SCI Benner's interest here is twofold: (1) the prison has a legitimate interest in the efficacy of COVID-19 masks, which are designed to limit the transmission of the virus; and (2) the prison has a legitimate interest in prohibiting prisoners from making alterations to any state-issued items, including COVID-19 masks.  (Id. at 5-6; id. at 5 (arguing that allowing prisoners to write, draw, paint or otherwise on state-issued COVID-19 masks could impair the integrity and functionality of the masks, which could

ultimately lead to more COVID-19 infections at the prison); id. at 6 (arguing that, if prisoners were permitted to alter state-issued items, it would be exceedingly difficult for prison administrators to distinguish between permissible and impermissible alterations and to attempt to manage and regulate those alterations)).

In support of these asserted governmental interests, Defendants have submitted several pieces of evidence into the summary judgment record. More specifically, Defendants have submitted evidence that Defendant Hammers requested Plaintiff "to swap" the COVID-19 mask he was wearing for a new one. (Doc. No. 37-2 (containing Defendant Hammers' declaration, wherein he declares this fact under the penalty of perjury).) Defendants have also submitted evidence of a DOC Policy—and specifically, DC-ADM 815—which instructs inmates that all items issued to them must be used "solely for their intended purpose" and, further, that any "[a]buse or misuse" of such items may result in disciplinary action. (Doc. No. 37-3.) Finally, Defendants have submitted evidence that the challenged prohibition on altering—more specifically—state-issued COVID-19 masks was expressly set forth in an information bulletin, dated July 8, 2020.[5] (Doc. No. 37-2 ¶ 7; Doc. No. 9-1 at 1.)

---

[5] The Court notes that, because this bulletin is dated July 8, 2020, it was not issued until after Plaintiff's COVID-19 mask was confiscated. Even acknowledging this fact, however, the Court still finds, that in reviewing the summary judgment record as a whole, the DOC's prohibition on altering state-issued items, such as COVID-

In considering this evidence, the Court finds that the articulated connections between the prohibition of altering state-issued COVID-19 masks, and the interests put forth to justify that prohibition, are logical and legitimate.  The Court further notes that, in this regard, the professional judgment of prison administrators at SCI Benner is owed substantial deference.  See Beard v. Banks, 548 U.S. 521, 528 (2006) (discussing Turner case law and how such deference is owed to the judgment of prison administrators); Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (explaining that federal courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them" (citations omitted)).  Accordingly, the Court concludes that the first Turner factor supports the reasonableness of SCI Benner's prohibition on altering state-issued COVID-19 masks.

Regarding the second Turner factor, the Court finds that Defendants have established that Plaintiff has alternative means of exercising his right to free speech without altering the state-issued COVID-19 masks.  More specifically, Defendants argue, and the Court agrees, that prisoners are able to express themselves verbally and in writing without altering the masks.  (Id. at 6.)  Defendants also argue, and

---

19 masks, had a valid, rational connection to legitimate penological interests. (Doc. No. 37-3.)

again the Court agrees, that Plaintiff has not alleged or shown that he was prohibited from discussing the events surrounding George Floyd or any other asserted instances of racial injustice with other prisoners at SCI Benner or any other individuals for that matter.  (Id.)   In addition, Plaintiff has also not alleged or shown that he was limited or prevented from writing about such events in letters, journals, pamphlets, or other documents of the sort.  (Id. at 6-7.)  While, perhaps, these other methods of exercising his constitutional right to free speech may not have been preferred by or most ideal to Plaintiff, this does not change the fact that alternative methods of exercising his right not only existed but were available to him.  See Thornburgh v. Abbott, 490 U.S. 401, 417-18 (1989) (explaining how an analysis of the second Turner factor must be approached "sensibly and expansively," in order to encompass other alternative methods that are available and serve the same underlying function). Accordingly, the Court concludes that the second Turner factor supports the reasonableness of SCI Benner's prohibition on altering state-issued COVID-19 masks.

Regarding the third Turner factor, Defendants assert that an accommodation permitting prisoners to alter state-issued COVID-19 masks would have a negative impact on fellow prisoners, corrections officers, and the allocation of prison resources.  (Doc. No. 38 at 7.)  In support of this assertion, Defendants argue that an accommodation could lead to more COVID-19 infections at SCI Benner, which

would endanger the prisoners and staff alike.  (Id.)  Defendants further argue that an accommodation would also negatively impact prison resources because it would be difficult (if not impossible) to administer, as it would place prison administrators in the position of having to exercise judgment over what is and what is not a permissible alteration.  (Id.)  Finally, Defendants argue that an accommodation would provide prisoners with additional grounds to make complaints about prison staff, which in turn would require the prison to expend additional administrative resources in dealing with those complaints. (Id.) And, similarly, as to the fourth Turner factor, Defendants argue that there is no effective way to adopt a more limited policy accommodating some COVID-19 mask alterations, but not others.  (Id. at 7-8.)

While these arguments are persuasive, the Court observes that Defendants have not cited to particular parts of materials in the record in order to support these arguments.  Even acknowledging this observation, however, the Court cannot find that this suggests any unreasonableness with respect to SCI Benner's prohibition on altering state-issued COVID-19 masks.  In fact, the record before the Court does not suggest any alternatives here and, thus, this absence of such alternatives only further supports the reasonableness of the challenged prohibition.  See Turner, 482 U.S. at 90 (explaining that "the absence of ready alternatives is evidence of the reasonableness of a prison regulation," while "the existence of obvious, easy

alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns").

As a result, the Court concludes that Defendants have met their summary judgment burden in asserting legitimate penological interests that are reasonably related to SCI Benner's prohibition on altering state-issued COVID-19 masks. The burden thus shifts to Plaintiff to demonstrate that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); see also Beard, 548 U.S. at 529-30 (explaining, in the context of a Turner analysis, that courts must "distinguish between evidence of disputed facts and disputed matters of professional judgment" and, therefore, "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage"); Fontroy, 559 F.3d at 177 (explaining that, while prison officials are required to demonstrate that a rational connection exists between the regulation and a legitimate penological interest, the inmate bears the ultimate burden of demonstrating that the regulation is unconstitutional (citation omitted)).

Plaintiff, however, has not filed a response to Defendants' motion for summary judgment, despite being specifically ordered to do so. (Doc. No. 42.) As such, Plaintiff has not asserted any arguments or submitted any evidence to overcome the deference that is afforded to prison administrators in these types of matters. See Shaw, 532 U.S. at 232 (explaining that, because the inmate "must

overcome the presumption that the prison officials acted within their broad discretion[,]" the inmate's burden is a "heavy" one (citation and internal quotation marks omitted)).

That being said, the Court has conducted a thorough and impartial review of the record in this matter. While Plaintiff asserts allegations in his amended complaint that a fellow inmate wore a skull face mask on three (3) separate occasions at SCI Benner (Doc. No. 9 at 5), the Court finds that these allegations have not been fully developed for the Court's consideration and, further, that Plaintiff has not set forth any argument concerning these allegations. Additionally, the Court observes that Plaintiff's amended complaint has not been signed under the penalty of perjury. Thus, the Court does not treat Plaintiff's amended complaint as admissible evidence opposing Defendants' motion for summary judgment. See generally Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 443 (3d Cir. 2020) (explaining that a district court, in ruling a motion for summary judgment, may consider a plaintiff's sworn verified complaint to the extent that it is based on "personal knowledge and set[s] out facts that would be admissible in evidence" (citations omitted)); Ziegler v. Eby, 77 F. App'x 117, 120 (3d Cir. 2003) (unpublished) (explaining that the plaintiff "did not submit any evidence to refute these [affidavits] or any other affidavits produced by any of the defendants" and that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for

purposes of Federal Rule of Civil Procedure 56(e)" (citing <u>Reese v. Sparks</u>, 760 F.2d 64, 67 (3d Cir.1985))).[6]

Consequently, the Court finds that Plaintiff has not met his heavy burden of overcoming the presumption that SCI Benner prison officials acted within their broad discretion in prohibiting prisoners from making alterations to state-issued COVID-19 masks.  As a result, the Court will grant Defendants' motion for summary judgment and direct the Clerk of Court to close this case.[7]

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, the Court will grant Defendants' motion for summary judgment.  (Doc. No. 36.)  An appropriate Order follows.


Dated: April 12, 2023,                                  s/ Sylvia H. Rambo
                                                        SYLVIA H. RAMBO
                                                        United States District Judge

---

[6] To the extent that Plaintiff's deposition contains any similar allegations regarding this fellow inmate, the Court notes that Plaintiff refused to affirm that his deposition testimony was the truth, the whole truth, and nothing but the truth.  (Doc. No. 37-1 at 2.)

[7] In light of the Court's conclusion with respect to the <u>Turner</u> standard, the Court need not address Defendants' remaining arguments.  (Doc. No. 38 at 8-10.)

21